UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| STEVEN BRAZILE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:10CV1184MLM |
| ) | |
| SARA LEE CORPORATION, ) | |
| MATT SPYERS, and STEVE MERRY, ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM OPINION

Before the court is the Motion to Remand filed by Plaintiff Steven Brazile ("Plaintiff"). Doc. 21. Defendant Sara Lee Corporation ("Sara Lee") and Defendant Matt Spyers ("Spyers") filed a Response. Doc. 29. Plaintiff filed a Reply. Doc. 33. The parties who have been served have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.. § 636(c).

### BACKGROUND

Plaintiff alleges that he was employed by Sara Lee from August 1983 through December 2009; that he was born in 1961 and, at all relevant times, was "not less than 47 years of age"; that, at all relevant times, his title with Sara Lee was Vice President of Application Development and Support for North America; that, at all relevant times, Sara Lee had an office for the transaction of its usual and ordinary business in Missouri; that Defendant Steve Merry ("Merry") is a citizen of the United Kingdom; that Spyers is a citizen and resident of Missouri; that the conduct which is the subject matter of Plaintiff's lawsuit took place in St. Louis County, Missouri; that Spyers and Merry are employers within the meaning of Mo. Rev. Stat. § 213.010(7) because they acted directly in the interest of Sara Lee; that, as of February 2008, Sara Lee, Merry, and Spyers (jointly, "Defendants")

were aware that Plaintiff suffered from deep vein thrombosis ("DVT"), a medical condition constituting a disability; that in April 2008, Merry told Plaintiff that Spyers was being promoted to Vice President and North American Chief Information Officer, that Plaintiff would report to Spyers, and that Spyers was being promoted because he was younger than Plaintiff and "had more upward career potential"; that, in June 2008, Spyers became Plaintiff's immediate supervisor; that, in December 2008, Spyers told Plaintiff that Spyers and Merry had decided to downgrade the executive level Vice President position held by Plaintiff for the Business Processing Outsourcing transition project to a director position after the transition was completed; and that, in December 2008, Spyers told Plaintiff that he did not think Plaintiff would be interested in the director position and Plaintiff responded that he would be interested.

Plaintiff further alleges that, in January 2009, Spyers told Plaintiff, among other things, that Defendants needed Plaintiff to lead the Business Process Outsourcing transition team; that he did not want Plaintiff in a leadership role, including the director position, after the transition was complete; that Plaintiff would not be considered for a position in the retained organization even though Plaintiff was overqualified; that Plaintiff was not considered for such a position for "personal reasons"; that Defendant was offering Plaintiff a "special program"; that under this program Plaintiff had two options; that the first option was a job with IBM, on Sara Lee's account, with Plaintiff's current compensation, two guaranteed years of employment, and two years of severance from Sara Lee; and that the second option was an enhanced severance package.

Plaintiff also alleges that, in January 2009, all employees, except Plaintiff, who were impacted by the Business Process Outsourcing Project were informed of their status and given paperwork; that nearly all of these employees are younger than Plaintiff; that, in January 2009, Spyers told Plaintiff that he would not be eligible for the Director's Role for Fresh Bakery Center of Excellence because

2

he was in a "special program" since Defendants did not want to employ Plaintiff after he had completed the transition; that, in January 2009, Linda Feuchtmanm, who is younger than Plaintiff, was selected for this Director's Role; that, in April 2009, Spyers told Plaintiff that Plaintiff was in a "special program" and he would not discuss with Plaintiff the open position of a director level service manager in the Information Technology Department; that, in May 2009, Spyers told Plaintiff the "special program" offer would be documented, and that Defendants needed to wait until after the confidential retention bonuses were developed and offered to key employees because Defendants did not want Plaintiff's "special program" to be confused with these approved amounts; that, in June 2009, Spyers employment with Sara Lee ceased; that, in June 2009, Mike Aufdembrink, whose birth date is August 21, 1966, was promoted to lead the North American Business Process Outsourcing transition project; that Plaintiff was to report directly to Aufdembrink; that, on June 8, 2009, Merry confirmed to Plaintiff that Defendants were giving Plaintiff his choice between the two options included in the "special program"; that, on July 21, 2009, Plaintiff was informed by Lisa Sanders, Senior Manager of Human Resources, that no "special program" existed and that Spyers and Merry should not have made these offers to Plaintiff; that, on July 23, 2009, Merry acknowledged Plaintiff's health problems and told Plaintiff that Plaintiff's DVT posed an issue with Plaintiff's ability to travel for the positions Plaintiff sought; that, on August 14, 2010, Plaintiff was issued a letter stating that Merry and Spyers had acted beyond their authority to offer Plaintiff a "special program"; that Sara Lee would not honor the promises made to Plaintiff; that Sara Lee terminated Plaintiff on December 31, 2009; and that, of approximately twenty executive level employees that led the Business Process Outsourcing effort, Plaintiff was the only employee terminated. Doc. 1-1, ¶¶ 1-44.

In Count I of his Complaint, Plaintiff alleges that Defendants violated the Missouri Human Rights Act ("MHRA"), Mo. Rev. Stat. §213.010(1), in that they discriminated against him, in regard

3

to their failing to promote him and terminating him, based on his age. In Count II, Plaintiff alleges that Defendants discriminated against him in violation of the MHRA, based on his DVT, which constitutes a disability under Mo. Rev. Stat. §213.010(4). In Count III, Plaintiff alleges Fraudulent Inducement against Defendants, in that Defendants made false representations to Plaintiff that he would be part of a "special program"; that Defendants knew these representations were false at the time they made them or were ignorant of the truth of the representations; that these representations induced and caused Plaintiff to remain employed with Sara Lee and to complete the Business Processing Transition project; that Plaintiff relied on these representations; that Defendants intended that Plaintiff would act and rely upon these representations in the manner reasonably contemplated by Defendants; that, at the time they were made, Plaintiff was ignorant of the falsity of the representations and had a right to rely thereon; that Defendants deliberately failed to inform Plaintiff that he was not part of a "special program" until August 15, 2009, by which date the Business Process Outsourcing transition project was nearing completion; that, as a direct result of Defendants false representations and Plaintiff's reliance thereon, Plaintiff turned down other employment opportunities; and that, as a result of Defendant's conduct, as described in Count III, Plaintiff suffered damages.

Sara Lee and Spyers removed this matter from State court to the Federal Court for the Eastern District of Missouri. In their Notice of Removal, Sara Lee and Spyers allege that this court has jurisdiction based on a federal question raised in Count III of Plaintiff's Complaint. In this regard, Sara Lee and Spyers allege that Count III could have originally been filed under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq.; that there is complete federal preemption of Count III under ERISA; and that, therefore, this court has original jurisdiction over the claim of Count III. Sara Lee and Spyers also contend, in the Notice of Removal, that this court

4

has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). In support of the position that the court has diversity jurisdiction, Sara Lee and Spyers contend that joinder of Spyers as a Defendant in Counts I, II, and III is fraudulent and that, therefore, complete diversity exists.

Plaintiff filed the pending Motion to Remand in which he contends that Spyers is not fraudulently joined; that complete diversity does not exist because both Plaintiff and Spyers are residents of Missouri; and that ERISA does not preempt his fraudulent inducement claim. In his Motion to Remand, Plaintiff also seeks attorneys' fees and costs pursuant to 28 U.S.C. § 1447.

## LEGAL FRAMEWORK FOR FEDERAL JURISDICTION

1.  28 U.S.C. § 1332(a) provides that "district courts shall have original jurisdiction of all civil actions when a matter in controversy...is between (1) citizens of different states." The party seeking the federal forum has the burden of pleading diversity of citizenship of the parties, Walker v. Norwest Corp., 108 F.3d 158, 161 (8th Cir. 1997), and the burden of establishing diversity jurisdiction by a preponderance of the evidence. Sheehan v. Gustafson, 967 F.2d 1214, 1215 (8th Cir. 1992); Yeldell v. Tutt, 913 F.2d 533, 537 (8th Cir. 1990); Russell v. New Amsterdam Cas. Co., 325 F.2d 996, 997 (8th Cir. 1964). "[A]ll doubts about federal jurisdiction [are resolved] in favor of remand." Transit Cas. Co v. Certain Underwriters at Llyod's of London, 119 F.3d 619, 625 (8th Cir. 1997).

2.  The court in Iowa Pub. Serv. Co. v. Med. Bow Coal, Co., held, in regard to diversity where there are multiple plaintiffs and/or defendants:

> [I]n a case where there are plural plaintiffs and plural defendants a federal court does not have diversity jurisdiction unless there is diversity between all plaintiffs and all defendants. ... [I]f the "nondiverse" plaintiff is not a real party in interest, and is purely a formal or nominal party, his or its presence in the case may be ignored in determining jurisdiction.

556 F.2d 400, 403-404 (8th Cir. 1977) (internal citations omitted).

3.      Federal district courts "have original jurisdiction of all civil actions arising under the ... laws of the United States." 28 U.S.C. § 1331. The "burden of establishing that a cause of action lies within the limited jurisdiction of the federal courts is on the party asserting jurisdiction."Arkansas Blue Cross and Blue Shield v. Little Rock Cardiology, 551 F.3d 812, 816 (8th Cir. 2009) (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)). Whether a federal court has federal-question jurisdiction is governed by the "'well-pleaded complaint rule,' which provides that the federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Central Iowa Power Co-Op v. Midwest Indept. Transmission, 561 F.3d 904, 912 (8th Cir. 2009) (internal citation omitted). See also Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987). "[F]ederal court jurisdiction must affirmatively appear clearly and distinctly. The mere suggestion of a federal question is not sufficient to establish the jurisdiction of federal courts. Bilal v. Kaplan, 904 F.2d 14, 15 (8th Cir. 1990) (citing Koll v. Wayzata State Bank, 397 F.2d 124, 127 (8th Cir.1968)).

4.      As explained by the court in Central Iowa Power, 561 F.3d at 912:

> Because this well-pleaded complaint rule "makes the plaintiff the master of the claim[, the plaintiff] may avoid federal jurisdiction by exclusive reliance on state law." Id. Defendants are "not permitted to inject a federal question into an otherwise state-law claim and thereby transform the action into one arising under federal law." Gore, 210 F.3d at 948. It is firmly established that a federal defense, including a preemption defense, does not provide a basis for removal, "even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue in the case." Caterpillar, 482 U.S. at 393, 107 S.Ct. 2425. ...
>
>        "There is, however, another longstanding, if less frequently encountered, variety of federal 'arising under' jurisdiction, [the Supreme Court] having recognized for nearly 100 years that in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005). There is no "single, precise, all-embracing test for jurisdiction over federal issues embedded in state-law claims between nondiverse parties." Id. at 314, 125 S.Ct. 2363 (internal marks omitted). To determine whether a case fits "within th[is]

> special and small category," Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 699, 126 S.Ct. 2121, 165 L.Ed.2d 131 (2006), "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable, 545 U.S. at 314, 125 S.Ct. 2363.

See also Metropolitan Life, 481 U.S. at 63-64.

5. 28 U.S.C. § 1441 sets forth the grounds for removal from state court to federal court. Section 1441(a) provides, in pertinent part, that "any civil action brought in State court of which [federal district courts] have original jurisdiction, may be removed by the defendant" to federal district court.

6. 28 U.S.C. § 1447(c) provides, in pertinent part, that: "A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)."

7. The Eighth Circuit holds that fraudulent joinder of a non-diverse party does not prevent removal based on diversity jurisdiction. Anderson v. Home Ins. Co., 724 F.2d 82, 84 (8th Cir. 1983). See also BP Chemicals Ltd. v. Jiangsu Sopo Corp, 285 F.3d 677, 685 (8th Cir. 2002) (holding that a defendant's right of removal based on diversity of citizenship may not be defeated by fraudulently joining a non-diverse party). The Eighth Circuit further holds that "'[j]oinder is fraudulent and removal is proper when there exists no reasonable basis in fact and law'" to support a claim against the defendant whose joinder would preclude removal. Id. (quoting Wiles v. Capitol Indem, Corp., 280 F.3d 868, 871 (8th Cir. 2002)). "Conversely, if there is a reasonable basis in fact and law supporting the claim, the joinder is not fraudulent." Filla v. Norfolk Southern Ry. Co., 336 F.3d 806, 810 (8th Cir. 2003). The Eighth Circuit articulated in Filla considerations relevant to determining whether joinder is fraudulent and held as follows:

> Where applicable state precedent precludes the existence of a cause of action against a defendant, joinder is fraudulent. "[I]t is well established that if it is *clear* under governing state law that the complaint does not state a cause of action against the non-diverse defendant, the joinder is fraudulent and federal jurisdiction of the case should be retained." Iowa Public Service Co. v. Medicine Bow Coal Co., 556 F.2d 400, 406 (8th Cir. 1977) (emphasis added). However, if there is a "colorable" cause of action-that is, if the state law might impose liability on the resident defendant under the facts alleged-then there is no fraudulent joinder. See Foslip Pharmaceuticals, Inc. v. Metabolife Intern., Inc., 92 F.Supp.2d 891, 903 (N.D. Iowa 2000).

Id.

Upon "determining whether there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved ... [a] district court should resolve all facts and ambiguities in the current controlling substantive law in the plaintiff's favor." Filla, 336 F.3d at 811 (citing Fields v. Pool Offshore, Inc., 182 F.3d 353, 357 (5th Cir.1999)).

8.  As stated above, a defendant which has removed a matter to federal court from state court must establish federal jurisdiction by the preponderance of the evidence. In re Prempro Prods. Liability Litigation, 591 F.3d 613, 620 (8th Cir. 2010) (citing Altimore v. Mount Mercy College, 420 F.3d 763, 768 (8th Cir. 2005)). "All doubts about federal jurisdiction should be resolved in favor of remand to state court." Id. (citing Wilkinson v. Shackelford, 478 F.3d 957, 963 (8th Cir. 2007))

**DISCUSSION**

**A.    Fraudulent Joinder:**

In Count III, Plaintiff alleges fraudulent inducement against Defendants, including alleged non-diverse Defendant Spyers. Fraudulent inducement is a subset of fraudulent misrepresentation. Bracht v. Grushewsky, 448 F.Supp.2d 1103, 1110 (E.D. Mo. 2006); Hess v. Chase Manhattan Bank, USA, N.A., 220 S.W.3d 758, 763 (Mo 2007) (en banc). The elements of fraudulent misrepresentation under Missouri law are:

(1) a representation;
(2) its falsity;

8

(3) its materiality;
(4) the speaker's knowledge of the falsity or his ignorance of its truth;
(5) the speaker's intent that his representation should be acted upon by the hearer and in the manner reasonably contemplated;
(6) the hearer's ignorance of the falsity of the representation;
(7) the hearer's reliance on the truth of the representation;
(8) the hearer's right to rely thereon;
(9) the hearer's consequent and proximately caused injury;

Clark v. Olson, 726 S.W.2d 718, 719 (Mo 1987) (citing Ackmann v. Keeney-Toelle Real Estate Co., 401 S.W.2d 483, 488 (Mo. 1966) (en banc). See also Citizens Bank of Appleton City v. Schapeler, 869 S.W.2d 120, 126 (Mo. Ct. App. 1993).

Fraudulent inducement occurs when fraudulent misrepresentation leads another to enter into a transaction with a false impression of the risks, duties, or obligations involved. Bracht, 448 F.Supp.2d at 1110; Hess, 220 S.W.3d at 763. For misrepresentations to be the basis of Plaintiff's allegation of fraudulent inducement, the alleged misrepresentations "must relate to a past or existing fact." Trotter's Corp. v. Ringleader Rests., Inc., 929 S.W.2d 935, 940 (Mo. Ct. App. 1996) (citing Titan Const. Co. v. Mark Twain Kansas City Bank, 887 S.W.2d 454, 459 (Mo. Ct. App.1994)). A promise to take future action" may be actionable where "the maker" presently intended not to perform. Trotter's, 929 S.W.2d at 940 (citing Titan Const. Co. v. Mark Twain Kansas City Bank, 887 S.W.2d 454, 459 (Mo. Ct. App. 1994)). See also Kenley v. J.E. Jones Cosnt. Co., 870 S.W.2d 494, 497 (Mo. Ct. App. 1994) ("The critical element [of fraudulent misrepresentation] is proof that the defendant at that time did not intend to perform consistently with the statements."); Kincaid Enters., Inc. v. Porter, 812 S.W.2d 892, 900 (Mo. Ct. App. 1991) (holding that fraudulent inducement requires "fraudulent intent in the making of a contract").

Despite having removed on the basis of diversity jurisdiction and fraudulent joinder of Spyers in Counts I, II, and III and despite Plaintiff's arguing this point in his Motion to Remand, Sara Lee and Spyers do not address this issue in their Response to Plaintiff's Motion to Remand. In any case,

the court finds that there is a reasonable basis for predicting that State law might impose liability on Spyers pursuant to a fraudulent inducement theory based upon the facts alleged by Plaintiff in Count III. See Bracht, 448 F.Supp.2d at 1110; Hess, 220 S.W.3d at 763; Trotter's, 929 S.W.2d at 940; Filla, 336 F.3d at 811. The court finds, therefore, that Spyers' joinder in Count III is not fraudulent, and that because Spyers is a non-diverse defendant this court does not have diversity jurisdiction. Under such circumstances the court need not consider, in regard to Counts I and II, whether Spyers is fraudulently joined as, even if he were fraudulently joined in Counts I or II, his proper joinder in Count III defeats this court's diversity jurisdiction.

**B.     Federal Preemption:**

Sara Lee and Spyers contend that Count III is completely preempted by ERISA, because Plaintiff's claim in Count III falls within the scope of ERISA, § 502(a)(2) and (3). 29 U.S.C. § 1132(a).[1]  Sara Lee and Spyers claim that Count III is really a claim seeking recovery under an ERISA plan resulting from an ERISA fiduciary's breach of his duties owed to the plan.

Section 502(a)(1)(B) provides that a plan participant or beneficiary may bring a civil cause of action to recover benefits due to him under the terms of the plan. 29 U.S.C. § 1132(a)(1)(B). Section 502(a)(2) provides that a civil action may be brought "by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of [ERISA]." 29 U.S.C. § 1109. Section 502(a)(3) provides that a civil action may be brought by the same persons to enjoin conduct or to obtain equitable relief. ERISA, § 1109(a) provides:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which

---

[1] Sara Lee and Spyers specifically rely on § 502(a)(2) and (3) upon their arguing against Plaintiff's Motion for Remand. They also make a general reference to § 502(a).

have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

29 U.S.C. § 1104 sets forth the duties of an ERISA fiduciary. In particular, §1104(a)(1) provides that an ERISA fiduciary "shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and – (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries." Section 1104(a)(1)(B) further provides that upon so doing an ERISA fiduciary shall act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." Thus, for a claim to allege a breach of an ERISA fiduciary duty, a plaintiff must allege that the defendant was acting as a fiduciary when he breached duties owed to an ERISA plan. However, § 1104 "cannot independently support a claim of fiduciary duty." Sahulka v. Lucent Technologies, Inc., 206 F.3d 763, 768 n.9 (8th Cir. 2000) (citing Slice v. Sons of Norway, 34 F.3d 630, 633 (8th Cir. 1994) ("29 U.S.C. § 1104 cannot independently support a claim of breach of fiduciary duty where such a claim cannot be stated under any provision of 29 U.S.C. § 1132(a)."). Section 1132(a) provides the exclusive causes of action for claims by ERISA plan participants and beneficiaries seeking to enforce rights under an ERISA plan. Slice, 34 F.3d at 633 (citing Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54 (1987).

As stated above, ordinarily, a claim under federal law only arises when a federal issue appears on the face of a plaintiff's complaint. Metropolitan Life, 481 U.S. at 63; Central Iowa Power, 561 F.3d at 912. An ERISA claim does not appear on the face of Plaintiff's Complaint. The court must consider, however, whether Count III falls within an area which Congress has "so completely pre-empt[ed]" so that a civil complaint raising this select group of claims is necessarily federal in

11

character." Metropolitan Life, 481 U.S. at 63-64. Claims arising under ERISA's civil enforcement provision, § 502(a), do "implicate one such area of complete preemption" and are, therefore, removable to federal court. The Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc., 413 F.3d 897, 907 (8th Cir. 2005). "In the context of ERISA, [however] complete preemption can only occur when a plaintiff's state law claims are 'displaced' by ERISA § 502." Harris v. Deaconess Health Servs. Corp., 61 F. Supp.2d 889, 894 (E.D. Mo. 1999) (internal citations omitted).

"To determine whether [Plaintiff's] claims fall within the scope of § 502(a), [this] court must examine three factors." Harris, 61 F. Supp.2d at 894 (citing Tovey v. Prudential Ins. Co. of America, 42 F.Supp.2d 919, 922 (W.D. Mo. 1999)). First, to establish that a claim is completely preempted by § 502(a) of ERISA, Sara Lee and Spyers must establish that Plaintiff is eligible to bring a claim under § 502(a). Id. The provisions of § 502(a)(1)-(3) are available to ERISA plan participants and beneficiaries for relief under § 1109. Id. The court will assume, arguendo, that Plaintiff would be eligible to bring claims as a participant or beneficiary.[2]

Second, to establish complete preemption by ERISA, Sara Lee and Spyers must establish that the subject matter of Plaintiff's state law claim for fraudulent inducement falls within the scope of § 502(a); "in other words, the claim must seek to recover benefits, enforce rights, or clarify rights to future benefits." Id. Third, Sara Lee and Spyers must establish that "the benefits or rights" Plaintiff "seeks to recover, clarify, or enforce arise under the terms of" an ERISA plan. Id. (citing Tovey, 42 F.Supp.2d 295).

---

[2] Plaintiff acknowledges that he was covered by Sara Lee's Severance Plan when he was employed by Sara Lee but argues that at the time he filed this lawsuit he was no longer covered by the Plan. As such, Plaintiff contends that he does not meet this first requirement. Because the court finds, above, that the second and third criteria for complete preemption are not met, the court need not determine whether Plaintiff meets the first criteria.

In Count III, Plaintiff has sued Defendants in their capacities as employers, not as fiduciaries. Plaintiff does not allege facts to suggest that Defendants are ERISA plan fiduciaries. 29 U.S.C. §§ 1132(a), 1104, 1109. Unequivocally, Plaintiff's fraudulent inducement claim does not allege a breach of a fiduciary duty, whether it be to a plan participant or beneficiary or to a plan itself. See Harris, 61 F. Supp.2d at 894  Further, the damages which Plaintiff seeks to recover include losses incurred as a result of his foregoing other employment opportunities and his suffering emotional damage; these damages are not benefits under an ERISA plan. The "special benefits" which Plaintiff alleges Spyers and Merry told Plaintiff he would receive were beyond those which Plaintiff could have received under Sara Lee's severance policy. In this regard, Spyers and Merry allegedly designated Plaintiff's alleged options as "special." Sara Lee and Spyers cite no authority for the position that a State claim for fraudulent inducement is, in reality, an ERISA claim for breach of fiduciary duty. An action for fraudulent inducement brought against an employer can not be viewed as an ERISA claim merely because an employer has an ERISA plan; rather, Sara Lee and Spyers must establish the three criteria set forth above to establish that such a claim is an ERISA claim. See In re Prempro, 591 F.3d at 620; Arkansas Blue Cross, 551 F.3d at 816; Bilal, 904 F.3d at 15; Harris, 61 F. Supp.2d at 894. As such, the court finds that Plaintiff's claim of fraudulent inducement, in Count III, does not fall within the scope of § 502(a) of ERISA; that the benefits Plaintiff seeks to recover do not arise must arise under the terms of an ERISA plan; and that Sara Lee and Spyers have not met their burden to establish that Plaintiff's claim for fraudulent inducement is completely preempted by ERISA. See In re Prempro Prods., 591 F.3d at 620; Arkansas Blue Cross, 551 F.3d at 816; Slice, 34 F.3d at 633; Harris, 61 F. Supp.2d at 894. The court finds, therefore, that it does not have subject matter jurisdiction based on ERISA.

Plaintiff asks that the court award him reasonable costs and attorneys' fees related to Defendants' removal of this matter from State court to federal court. Such costs and fees are awarded only where the removing party lacks an "objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp, 546 U.S. 132, 140 (2005). Under the circumstances of this case the court finds that an award of reasonable costs and fees associated with remand are not warranted.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand is **GRANTED**; Doc. 20

**IT IS FURTHER ORDERED** that Plaintiff's request for costs and attorneys' fees is **DENIED;**

**IT IS FURTHER ORDERED** that the Clerk of this Court shall take all appropriate administrative action to remand this case to the Circuit Court of St. Louis County.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 28th day of September, 2010.